# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LILLY ACOSTA HAYES, now**
**LILLY ACOSTA,**

      **Plaintiff,**

vs.                                                            No. CIV 01-253 BB/LCS

**LARRY G. MASSANARI,**[1]
**Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed July 13, 2001 (*Doc. 7*). The Commissioner of Social Security issued a final decision denying the Plaintiff her claims for a period of disability, disability insurance benefits, and supplemental security income. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well taken and recommends that it be GRANTED.

## PROPOSED FINDINGS

### I. PROCEDURAL RECORD

1.    Plaintiff Lilly A. Hayes filed an application for a period of disability, disability insurance benefits and supplemental insurance benefits with the Social Security Administration on

---

[1] Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

1

May 19, 1998 alleging a disability since December 16, 1993 due to back pain. *See* R. at 66 and 76. Plaintiff's application was denied at the initial level on September 23, 1998, *see* R. at 51, and at the reconsideration level on January 12, 1999. *See* R. at 52. Plaintiff appealed the denial of her claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on March 25, 1999. *See* R. at 62.

    2.    The Commissioner's ALJ conducted a hearing on Hayes' application on January 24, 2000. *See* R. at 24. The ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had not engaged in substantial gainful activity since December 16, 1993; the severity of the claimant's impairments did not meet or equal a listed impairment; the claimant had "severe" impairments consisting of cervical spine problems and bilateral ulnar neuropathy problems; the claimant's subjective complaints and functional limitations, including pain were not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility; the claimant is unable to perform her past relevant work; and the claimant retained the residual functional capacity for a full range of sedentary work. *See* R. at 11-19.

## II. STANDARD OF REVIEW

    3.    The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence

supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

    4.    In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. §404.1520 (a-f) and 416.920. The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

    5.    At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

    6.    In December of 1993, the Plaintiff was injured in a motor vehicle accident. *See* R. at 112. Since then she has had three cervical spine surgeries. *See* R. at 124, 156, and 227. After the Plaintiff's first surgery, she continued to have symptoms related to her degenerative disc disease of the cervical spine. *See* R. at 199. She also complained of migraine headaches, pain in both arms, and

3

neck pain. *Id.* She noted to her physician that she is never without pain. *Id.* In August of 1995 it was reported that she had been admitted to the emergency room to receive injectable pain medication for temporary relief of a herniated disc. *See* R. at 126.

7. In January of 1996, Ms. Hayes reported to her physician, Guy R. Fogal, M.D., some improvement of her neck pain but that she still wore a neck brace at home. *See* R. at 193. She also reported some facial pain with intermittent twitching *Id.* Dr. Fogal prescribed Vicodin and injected cortisone for immediate relief. *Id.* The doctor ultimately decreased her medication and recommended physical therapy because of her improvement. *See* R. at 192. However, just one month later, Dr. Fogal recommended a pain management treatment program in order for the Plaintiff to develop skills to control her pain. *See* R. at 189.

8. Ms. Hayes reported a recurrence of all her symptoms in June of 1996. *See* R. at 188. Her complaints included left shoulder and arm pain, severe neck pain, and pain in her lower back. *Id.* Her medications included Oruvail, Ambien, Buspar, and Effexor. *Id.*

9. In August of 1996, Dr. Fogal recommended surgery for the Plaintiff's condition. *See* R. at 186. He stated that there was a possibility that the nonunion of her fusion from her previous surgery could be the cause of her pain. *Id.* Although he discussed the risks and benefits of surgery, Ms. Hayes wanted to proceed because of her severe pain. *Id.*

10. A few months after the surgery, the Plaintiff reported feeling better to her family practitioner, Jose Dubose, M.D. *See* R. at 183. He urged some strengthening of her neck and recommended gentle stretching and strengthening. *Id.* In April of 1997, she reported feeling better but that she experienced light headaches. *See* R. at 182. A few months later her neck pain returned. *See* R. at 180. Dr. Fogel assessed continued neck pain after a satisfactory two level fusion and

4

recommended use of collar for pain control and a cervical epidural. *Id.* The record also contains periodic evaluations by Dr. Dubose from February, 1995 through October, 1998. *See* R. at 248-66. Throughout the evaluations, there are numerous references to the Plaintiff's complaints of pain in her neck and arms. See R. at 248, 249, 250, 252, 253, and 257.

11. On November 16, 1998, Hal L. Hankinson, M.D. wrote a letter to the Disability Determination Unit. *See* R. at 267. In that letter, he wrote that although Ms. Hayes had improved, "she still [had] considerable aching pain in her neck and between her shoulders and despite extensive physical therapy and medication, strenuous physical activity results in severe pain making it difficult if not impossible for her to work." *Id.*

12. Thomas D. Ramage, M.D. listed the Plaintiff's problems in June 29, 1999. *See* R. at 284. The list included chronic pain syndrome, fatigue, pain medication addition, obesity, and anxiety and depression. *Id*. In August of 1999, Dr. Ramage stated that Ms. Hayes was in chronic pain and that treatment for her pain was legitimate. *See* R. at 281.

13. The following summary represents questions that were posed to the Plaintiff at her hearing. Ms. Hayes testified that she stopped working as a receptionist due to experiencing pain everyday. *See* R. at 31. The extent of her pain included stiffness and pain in her neck and back, headaches, and numbness in her arms. *See* R. at 32, 43, and 44. She stated she could walk eight blocks, lift approximately ten pounds, and sit for twenty minutes. *See* R. at 32, 39, and 48. Her activities include attending church twice a month, cooking, shopping and some cleaning. *See* R. at 36-38. The Plaintiff also testified that she is the sole care provider of her eleven-year-old son and that she has a master's degree in computer science. *See* R. at 28 and 30.

## IV. DISCUSSION

14. In support of her Motion to Reverse or Remand, the Plaintiff made the following arguments: she contends that the she cannot perform a full range of sedentary work; that the ALJ's decision was not supported by substantial evidence; and that the ALJ failed to give the necessary weight to the opinions of all the treating physicians.

### Residual Functional Capacity

15. The first issue the Court will address is whether the ALJ's RFC finding, that the Plaintiff could perform a full range of sedentary work, was supported by substantial evidence. Specifically, the Plaintiff contends that the ALJ erred in relying on the Grids instead of a vocational expert. The ALJ found that the "medical record simply does not contain objective medical evidence that would explain Claimant's reports to the Administration of ongoing, total disability caused by constant, severe pain." *See* R. at 15. In essence, the ALJ found that the Claimant's allegations regarding her limitations were not wholly credible and thus relied on the Grids, not a vocational expert, to assess her functional capacity.

16. The Grids are used at this step to determine whether a disability exists. 20 C. F. R. Part 404, Subpt. P, App. 2. The Grids reflect the existence of jobs in the national economy at various RFC levels by incorporating administrative notice of occupational publications and studies. 20 C. F. R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The Grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C. F. R. Part 404, Subpt. P, App. 2, §2000(e)(2).

17. Application of the Grids is appropriate only if the claimant is capable of

6

performing a full range of work required at a particular exertional level on a daily basis and if the claimant possesses the physical capacity to perform most of the jobs falling within that category. *See Ragland v. Shalala*, 992 F.2d 1056, 1058 (10th Cir.1993). Where a claimant's exertional capacity is further restricted by nonexertional limitations, however, reliance upon the Grids is misplaced. *Id.* An ALJ may rely on the Grids when evaluating a non-exertional impairment if the claimant's testimony is not entirely credible. *See Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988) (credibility determinations are province of ALJ) (cited in *Castellano v. Sec'y of HHS*, 26 F.3d 1027, 1029 (10th Cir. 1994)). The Supreme Court sustained the use of the Grids in appropriate situations as a legitimate method of making disability determinations more uniform. *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983). It noted that use of the Grids avoided the necessity of calling a vocational expert to testify in each case in which step five of the evaluation process was reached. *Id.*[2]

18. In this case, the ALJ precisely determined that the claimant's complaints were not credible and that her allegations of pain constituting a nonexertional limitation were not supported by medical evidence. It is not this Court's task to make an independent judgment as to the credibility of the claimant's testimony regarding her subjective physical symptoms. "[T]he determination of

---

[2] Instead, the vocational expert could be reserved for special situations where a claimant did not fit the Grids and additional evidence was necessary. Use of the Medical-Vocational Guidelines is predicated on an impairment that limits the strength or exertional capacity of the claimant. Therefore, if a claimant's impairment is of a different nature, the Grids may not be fully applicable. For instance, the regulations note that certain mental, sensory, or skin impairments, environmental restrictions, or postural and manipulative restrictions may be independent from exertional limits. 20 C.F.R., pt. 404, subpt. P, app. 2, §200.00(e) (1986). Where such "nonexertional" limitations combine with exertional limitations which do not in and of themselves establish a disability, then the grids are to provide no more than a framework for determining disability. The hearing officer is not to automatically or mechanically apply the Grids but instead must consider all the relevant facts in determining whether the nonexertional limitations diminish the claimant's ability to perform other work. *Id.* at §200.00(e)(2). *Talbot v. Heckler*, 814 F.2d 1456 (10th Cir. 1987) (citing *Heckler v. Campbell*, 461 U.S 458 (1983)).

credibility is left to the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Huston v. Bowen*, 838 F.2d 1125, 1131, 1133 (10th Cir. 1988) (citing *Kepler*, 68 F.3d at 391) (footnote omitted). The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. *Kepler*, 68 F.3d at 391 (internal quotations omitted). Failure to make credibility findings regarding critical testimony "fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability." *Id.* (internal quotations omitted). The ALJ must make an express credibility determination if she disbelieves a claimant's pain testimony. *See Schroeter v. Sullivan*, 977 F.2d 391, 394-95 (7th Cir. 1992).[3]

19. The ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence." *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)

---

[3] Social Security Ruling 96-7p also governs the ALJ's duty to assess a claimant's complaints. Ruling 96-7p states that "credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true." SSR 96-7p. The Ruling also states that the determination of credibility "can not be based on an intangible or intuitive notion about the individual's credibility. . . [but] must be grounded in the evidence and articulated in the determination or decision." *Id.* Although the ALJ's statement that she need not totally accept or totally reject the individual's statements is in line with the language in the Ruling, the ALJ still was required to "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about credibility." *Id.*

8

(quoting *Huston,* 838 F.2d at 1132 and n. 7).

20. Although there is evidence of claimant's recovery, there is overwhelming evidence of the Plaintiff's complaints of pain. The ALJ relied on the following excerpts from the record: in November 1995, Ms. Hayes told her doctor that she was feeling better and thus increased her activity. *See* R. at 194; the doctor noted that the problems with her neck were attributed to overuse. *Id.*; after her second surgery in October of 1996, she reported that she was very comfortable and that she had full range of motion in her neck. *See* R. at 184; in April of 1997, she told her doctor she was feeling better than she had in years. *See* R. at 182; and that she was able to walk daily, stretch, and lift two-pound weights despite her complaints of pain. *See* R. at 248.

21. Considering that there is evidence of intermittent periods of relief and recovery, there is also a sweeping amount of evidence supporting the Plaintiff's complaint of pain. *See* R. at 130, 134, 135, 186, 188, 189, 193, 199, etc. Particularly, Dr. Hankinson noted in a letter to the Disability Determination Unit dated November 16, 1998 that Ms. Hayes underwent a posterior cervical fusion including mass plating. *See* R. at 267. He further stated that "[a]lthough improved, she still has considerable aching pain in her neck and between her shoulders and despite extensive physical therapy and medication, strenuous physical activity results in severe pain making it difficult if not impossible for her to work." *Id.*

22. Dr. Hankinson's letter alone should have required the testimony of a vocational expert if not properly discredited. The government concedes that the ALJ's finding that the Plaintiff could no longer perform her past relevant work based on Dr. Hankinson's letter, was proper. Therefore, if the ALJ recognized the doctor's letter with respect to the Plaintiff's past relevant work, he should have given the same recognition to the doctor's letter when determining the Plaintiff's RFC. Instead,

9

the ALJ found the medical record did not support the claimant's allegations of pain. He failed to explain why he discredited Dr. Hankinson's letter with respect to the Plaintiff's RFC. There is also additional evidence which supports the Plaintiff's allegations of pain which were also not properly discredited by the ALJ. From January, 1996 through October, 1998, Dr. Dubose notes chronic neck and shoulder pain throughout multiple evaluations. *See* R. at 248-59. And as late as August 1999, Dr. Ramage stated that Ms. Hayes was in chronic pain. *See* R. at 281.

23. After reading the ALJ's opinion and the record, it is obvious the ALJ took many statements from the record out of context. Specifically, the ALJ's reference to the Plaintiff's ability to walk, stretch and to lift two-pound weights was taken from Dr. Dubose's notes. *See* R. at 248. Other comments made by Dr. Dubose included "[b]ase of neck aching. Radiates to head, down left arm at times. Worse if she looks down, sits for a long time or when she wakes up in the morning. . . . continues neck pain consistent with possible non-union . . . suggested physical therapy - patient has been walking . . . stretching in the morning and at night using 2 lb. weights." *See* R. at 248-50. After reading all of Dr. Dubose's notes, it is evident that the Plaintiff suffers from chronic neck pain and that one of the suggestions from Dr. Dubose, in addition to the multitudinous medications, was for the Plaintiff to try physical therapy on a daily basis. The ALJ also noted that the Plaintiff enjoys aerobics. *See* R. at 16. However, the exhibit from which the ALJ excised that statement was an assessment by Dr. Hankinson. *See* R. at 232. Dr. Hankinson actually stated within the <u>social history</u> section of his evaluation that Ms. Hayes "normally . . . . enjoys aerobics." *Id.* After reading the doctor's notes, it is obvious he was noting the activities in which Ms. Hayes could no longer perform.

24. In addition, I also find the ALJ failed to discuss the uncontroverted evidence upon which he chose not to rely, as well as the significantly probative evidence which he rejected. *See*

*Casias v. Sec'y of Health & Hum. Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991); *see also Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (ALJ must give legitimate reasons to reject treating physician's opinion). The ALJ cannot ignore other objective evidence favoring the plaintiff simply because he has already found plaintiff not credible. *Id.* Ignoring such evidence violates both his duty of inquiry, *Henrie v. U.S. Dept. of Health & Hum. Serv.*, 13 F.3d 359, 361 (10th Cir. 1993), and the prohibition on picking through the record for isolated bits of evidence. *Id.*[4]

25. After reviewing the arguments and the record as a whole, I find that because there was overwhelming evidence in the record supporting the Plaintiff's complaints of pain, the ALJ should have either fully discussed the uncontroverted evidence and explained why such evidence did not support the Plaintiff's complaints or called a vocational expert. Therefore, because I find that the ALJ did neither, I recommend find that the ALJ failed to support his findings with substantial evidence.

## RECOMMENDED DISPOSITION

I recommend that the Plaintiff's Motion to Reverse and Remand Administrative Decision, filed July 13, 2001 (*Doc. 7*), should be **GRANTED**. The ALJ should either discuss and properly analyze all of the uncontroverted evidence supporting the Plaintiff's complaint of pain or should call a vocational expert to evaluate the effect of the Plaintiff's pain condition on her ability to work and to determine whether the Plaintiff is disabled. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333

---

[4] If the ALJ properly discussed the uncontroverted evidence supporting the Plaintiff's complaint's of pain and produced a valid reason why he discredited such evidence, a vocational expert would then not be needed. The ALJ would then have substantially supported his credibility finding and would have been appropriate in relying solely on the Grids.

11

Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**